## Jones's Estate.

*Wills—Construction—"Survivors" not referred to death of testator.*
Under a testamentary direction to the executors to sell testator's publishing business and the real estate belonging thereto and invest the proceeds, paying the income therefrom in equal one-fourth parts to his widow and three daughters during the terms of their respective lives, "the shares of any of my said daughters dying without issue to go to the survivors and the principal of each of such four shares, after the termination of the life estates to become part of my residuary estate," if any of the daughters die leaving issue, such issue take their mother's share of the income until the termination of the trust, that is, until the termination of the life estates, but if a daughter die without leaving issue, her share of the income goes to the survivors.

Exceptions to adjudication. O. C. Phila. Co., April T., 1916, No. 158.
The language of the will and the essential facts appear from the following adjudication by

GEST, J.—Joshua R. Jones died on Feb. 13, 1915, leaving a will, by the first paragraph of which he directed as follows:

"I give, devise and bequeath unto my Executors hereinafter named and the survivor of them, all the business now owned and conducted by me under the trade name National Publishing Company, including the real estate at 239-243 South American St. in which said business is carried on, in trust to conduct and keep intact the said business and assets represented thereby for the period of two years after my decease, unless before that time the Executors hereof can sell the same as a complete plant for the minimum price of One hundred and fifty thousand dollars ($150,000), including contents of the building adjoining my said building on the north owned by the Thompson Estate, which I rent for storing paper, printed sheets, etc., and unless before the expiration of said two year period, the beneficiaries under this clause of my will, or a majority of them shall in writing request the said Executors to make an earlier sale thereof; and in further trust, when such sale shall be made, to invest the proceeds thereof and pay over equal fourth parts or shares the net income thereof to my wife Mary H. Jones and daughters May H. Lawrence, Maude J. Howell and Elsie J. Hampson during the terms of their respective lives, the share of any of my said daughters dying without issue, to go to the survivors, and the principal of each of said four shares, after the termination of said life estates, to become part of my residuary estate."

And the testator disposed of his residuary estate as follows:

"I give, devise and bequeath unto my executors hereinafter named and the survivor of them all my real estate situate in the City of Philadelphia and elsewhere not hereinbefore recited, and all the rest, residue and remainder of my estate, real, personal and mixed, and the reversions and remainders of any lapsed or expired life estates hereinbefore created, in trust to collect the rents, issues and profits thereof, and to pay over the net income thereof, quarterly to my said wife and three daughters, in equal fourth parts or shares to each, during the lifetime of such annuitant, for her sole and separate use, the principal of each fourth share after said life estate therein shall terminate, shall go to and vest in the children, if any, of said life tenant, or if dying without issue living, then to the persons who would take as heirs of such life tenant under the intestate laws of the State of Pennsylvania. Provided, however, that if any or all of my three daughters shall reach the age of fifty years, each so surviving shall be entitled at her option expressed in writing to my said Executors to have and receive Fifty thousand dollars ($50,000) of the principal of said trust estate."

Jones's Estate.

Mary H. Jones, widow of the testator, died on May 15, 1922. Elsie J. Hampson died on May 7, 1925, leaving a will, of which Franklin B. Hampson and the Commonwealth Title Insurance and Trust Company are executors. Mary A. Lawrence and Maude J. Howell are living. The latter has issue J. Zophar Howell and Mary Maude Howell, a minor, of whom Ralph C. Stewart is guardian.

The question that arose at the audit concerns the construction of the first paragraph of the will, in which the testator, after directing the sale of his business, called the National Publishing Company, together with the real estate on South American Street, further directed the investment of the proceeds of said sale and the payment of the income thereof in equal fourth parts to his wife, Mary, and his daughters, May, Maude and Elsie, during the terms of their respective lives, and added, "the shares of any of my said daughters dying without issue to go to the survivors, and the principal of each of said four shares, after the termination of said life estates, to become part of my residuary estate."

Elsie J. Hampson having died May 7, 1925, without issue, as it would appear, it is contended by Maude Jones Howell; her son, J. Zophar Howell, and the guardian of her minor child, May Maude Howell, that the proceeds of the sale of this business should not be distributed at this time, but held in trust, the income to be paid to the surviving daughters, who are May H. Lawrence and Maude J. Howell, and the survivor of them.

I notice in the beginning that the trust estates devised in the will, viz., the trust of the proceeds of the sale of the National Publishing Company and its real estate, and the trust of the residuary estate, have not been at any time segregated, and in the adjudication of the executor's account, May 4, 1916, it was remarked that "the business has been sold and there would seem to be no reason, in that the trusts are similar, that the amount realized from the sale of the real estate should not be treated as is the residue." And accordingly in said adjudication and schedule of distribution the entire balance, $227,540.70, less legacies amounting to $113,377.60, was directed to be retained by the accountants for the purposes of the trust and payment of certain annuities.

The first account of the trustees was filed after May H. Lawrence had attained the age of fifty years and elected to claim the $50,000, and the Auditing Judge, in his adjudication filed Sept. 21, 1918, ruled that her income should decrease to the extent that she drew on the principal. The principal of the estate was accordingly decreased by the payment of $50,000.

Maude J. Howell likewise attained the age of fifty on Aug. 30, 1920, and also exercised her option to receive the like sum of $50,000, and the trustees filed their second account in order that the same might be awarded to her, and this was done by the adjudication filed Nov. 18, 1920.

The balance of the principal awarded to the trustees was, therefore, reduced to $20,581.32, which appears by the schedule of distribution attached to said adjudication.

Elsie J. Hampson died after she had attained the age of fifty years, and had demanded of the trustees, in writing, the payment to her of the $50,000 provided in testator's will, but of this amount she had received only $10,000 at the time of her death, May 22, 1925. It, therefore, appears that $40,000 should be awarded to the executors of her will.

How much of the assets included in the present account represent the proceeds of the National Publishing Company and its real estate cannot appear without an analysis of the prior accounts. When the business was sold,

675 shares of the corporation then organized were received and carried at par, but these have since been sold. The question now arising as to the right to receive the income from the trust of the National Publishing Company was not foreseen when the prior accounts were filed, but must now be decided; and if the surviving *cestuis que trust* have a right to that income, it would appear that the account should be restated or reviewed.

I will now consider the question of construction. It is clear, in the first place, that the testator segregated from his general or residuary estate the proceeds of his business and of the real estate where it was carried on, and it is clear, also, that so long as his wife and three daughters lived, they should be paid each an equal one-fourth of the net income. When he added, "the share of any of my said daughters dying without issue to go to the survivors," the word "share" can only refer to income, for the daughters are only given the shares of the income, not of principal. This is rendered manifest by the clause following, that the principal of each of said four shares, after the termination of the life estates, shall become part of the residuary estate. The testator's meaning, therefore, is clear, that if any of his daughters should die leave issue, such issue should take their mother's share of the income until the termination of the trust; that is, as he expressed it, at the termination of said life estates; but if a daughter should die without leaving issue, her share of income should go to the survivors.

The argument on the other side, presented by Judge Jenkins, is founded on the general rule adopted in this State that words of survivorship refer to the period of the testator's death, as laid down in Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 373, and many other cases. The soundness of the general rule may be conceded, but *cessante ratione legis cessat ipsa lex.* The principal consideration, which has induced our courts to adopt the rule of the earlier English cases in preference to that enunciated by Vice-Chancellor Leach in Cripps v. Wolcott, 4 Mad. 11, was, as stated by Justice Strong in Ross v. Drake, 37 Pa. 373, and by Judge Penrose in Sterling's Estate, 7 Pa. C. C. Reps. 223, the presumption that the testator did not intend to exclude from participation in the remainder those persons who might claim through a deceased member of the class; and, further, in case there should be no living members of the class at the time of distribution, to prevent an intestacy. But where the testator has himself provided a substitutionary gift to those who might otherwise be excluded, there is no necessity for presuming such intention in favor of vesting at his death, for the will itself points to a contingency that is resolved at the death of the life-tenant. This is the *ratio decidendi* of Woelpper's Appeal, 126 Pa. 562, for there the remainders were differently expressed, being in favor of "the surviving brothers and sisters and the lawful issue of such as may be dead (if any)," so that the Supreme Court held that the death of the life-tenant was the period of vesting, and, therefore, excluded from participation the estate of a son who died without issue before the life-tenant. The court, in its opinion, in commenting upon Johnson v. Morton, 10 Pa. 245, and Ross v. Drake, 37 Pa. 373, observed that in neither of them was any provision made for the issue of any child of the testator who might die pending the life estate, so that the rule of construction was enforced in those cases in order to preserve the rights of the issue of children intermediate between the death of the testator and the time of distribution. There is nothing very unusual or unnatural in such a testamentary provision as is shown in the present case. The testator indicated his wish, should a daughter die without issue, to keep the fund for the benefit of his own daughters as long as any of them should live. If the testator had

intended that the survivors should be determined as of his own death, he might certainly have so expressed himself, as he did in the very next paragraph, in which he gave pecuniary legacies to his three daughters and provided that in the event of any of them predeceasing him, leaving issue, said issue should take their parent's share. And, indeed, if the testator's intention were contrary to what has been said, there would have been no object in this second paragraph, for if the word "survivors" is construed to relate to his own death, the shares of principal would pass under the residuary clause just as though the proceeds of the business had originally been given as part of the residue.

A further objection made by Judge Jenkins is thus expressed in his brief:

"Unless it be held that as each of the four life estates ceased, 'the principal of each of said four shares,' that is, that portion of the principal from which was derived one-fourth of the income, shall 'become part of' the residuary estate, the testator has not made any disposition of that portion of the principal, the income from which was paid to his widow, nor of the income therefrom."

To this, however, is applicable the direction of the will that "the principal of each of said four shares after the termination of said life estates to become part of my residuary estate," which would appear to mean that these four shares and each and all of them fall into the residuary estate when, and only when, the life estates terminate to which they are subject, in the event that the life-tenants left no issue. So far as the shares of the three daughters are concerned, it seems clear, as I have above stated, that each is subject to the right of survivorship in the other others, provided there is no issue. So far as the share of the widow is concerned, there is no such right of survivorship, but the principal of this fourth share became at the death of the widow part of the residuary estate. The only other alternative, so far as the widow's share of the income is concerned, would be an intestacy thereof, and in such event it would seem that the three daughters would be entitled thereto.

The balance of principal composed as stated is $123,057.50.

So much thereof as represents three-fourths of the proceeds of sale of the National Publishing Company and its real estate is awarded to the accountant as trustee under the first paragraph of the will, and from the remainder is awarded $40,000 to the executor of Elsie J. Hampson, subject to payments made on account, and the residue is awarded to the accountant as trustee of the residuary estate.

The balance of income is $174,490.14, less distribution, $159,035.58, leaving $15,454.56, which is awarded to the parties entitled under the will and this adjudication.

*Theodore F. Jenkins*, for exceptions; *Charles J. Shull*, contra.

THOMPSON, J., March 12, 1926.—We have read the will of testator and briefs of counsel, and are of the opinion that the construction placed on the will by the Auditing Judge is correct for the reasons set forth in his adjudication.

The accountant is instructed to restate the account before us so as to show how much of the balance in its hands represents three-fourths of the proceeds received from the sale of the National Publishing Company and its real estate, and how much represents residuary estate; said restatement to be shown in a schedule of distribution, and, when approved by all parties in interest, to be presented to the Auditing Judge for his approval.

All exceptions filed to the action of the Auditing Judge are, therefore, dismissed and the adjudication confirmed absolutely.